IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
WILLARD E. BARTEL, et al.,       :    CONSOLIDATED UNDER
(Administrators for Estate of    :    MDL 875
Nestor Ojeda)                    :
                                 :
     Plaintiffs,                 :
                                 :
     v.                          :
                                 :
FOSTER WHEELER COMPANY,          :
et al.,                          :
                                 :    E.D. Pa. Civil Action No.
     Defendants.                 :    2:11-cv-30571-ER
```

                         M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              October 27, 2015

      This case was transferred in January 2011 from the United State District Court for the Northern District of Ohio to the United States District Court for the Eastern District of Pennsylvania, where it became part of the consolidated asbestos products liability multidistrict litigation (MDL 875). The case was assigned to the Court's maritime docket ("MARDOC"). Plaintiffs, the administrators for the estate of Nestor Ojeda ("Decedent" or "Mr. Ojeda"), allege that Mr. Ojeda was exposed to asbestos while working aboard various ships. Plaintiffs assert that Mr. Ojeda developed an asbestos-related illness as a result of his exposure to asbestos aboard the ships.

      For the reasons that follow, the Court will deny Defendants' motion.

**I.   BACKGROUND**

In 1993, Mr. Ojeda brought claims against various defendants, including various shipowners represented by Thompson Hine LLP ("Defendants" or "the Thompson Hine Shipowners"). By way of Order dated May 2, 1996, Judge Charles Weiner[1] dismissed those claims administratively, leaving open the possibility for the action to be pursued at a later, unspecified date.[2]

---

[1]  Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]  On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1–2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show (1) "satisfactory evidence [of] an asbestos-related personal injury compensable under the law," and (2) "probative evidence of exposure" to a defendant's products. Id. at *5. On March 14, 1997, Judge Weiner applied that dismissal order to all future MARDOC cases. In 2002, the MDL Court ordered that administratively dismissed cases remain active for certain purposes (e.g., entertaining settlement motions and orders, motions for amendment to the pleadings, etc.), and in 2003, clarified that the administrative dismissals were "not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x 270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003)).

Approximately nine years after filing his asbestos action, on January 31, 2002, Mr. Ojeda filed a petition for bankruptcy under Chapter 13 in the United States Bankruptcy Court for the District of Puerto Rico (Old San Juan). Approximately three months later, a Chapter 13 plan was confirmed, and the bankruptcy case was closed approximately three years later, on August 16, 2005. On January 24, 2011 – approximately eight months after the bankruptcy case was closed and approximately sixteen years after Mr. Ojeda first filed his asbestos action – the MDL Court reinstated the asbestos action, which had been dismissed by Judge Weiner in 1996. A summary of this timeline of events is as follows:

- 1993 – Asbestos action filed
- May 2, 1996 – Asbestos action administratively dismissed
- January 31, 2002 – Bankruptcy action filed
- April 9, 2002 – Chapter 13 plan confirmed
- August 16, 2005 – Bankruptcy action closed
- January 24, 2011 – Asbestos action reinstated

    Defendants have moved for summary judgment, arguing that (1) Plaintiffs' claims are barred by way of judicial estoppel because Mr. Ojeda failed to disclose the asbestos action as an asset in his bankruptcy filing, and (2) Plaintiffs cannot pursue the asbestos action because it is now owned by the bankruptcy estate.

## II.  LEGAL STANDARD

    A.  <u>Summary Judgment Standard</u>

3

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who

4

must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

    B.    The Applicable Law

The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009) (Robreno, J.). Therefore, the Court will apply Third Circuit law in deciding the issues raised by Defendants' motion.

**III. THE PARTIES' ARGUMENTS**

    A.    Judicial Estoppel

Defendants contend that Plaintiffs' claims are barred on grounds of judicial estoppel. Specifically, they contend that Mr. Ojeda took irreconcilably inconsistent positions in his

---

[3] "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." Ryan Operations, 81 F.3d at 358 n.2.

bankruptcy proceeding and the instant proceeding. Defendants state that Mr. Ojeda concealed the existence of his asbestos claims when filing for bankruptcy by not reporting them as pending or likely claims on Schedule B ("Personal Property"), while simultaneously asserting such claims in the current and then-pending asbestos action. They further assert that a finding of bad faith is warranted because Mr. Ojeda had knowledge of the asbestos claims at the time that he filed for bankruptcy and had a motive to conceal the claims from the Bankruptcy Court (i.e., to keep any proceeds of the claims while reducing the amount of assets available for distribution amongst the creditors - a motive Defendants assert is common to nearly all debtors in bankruptcy). Finally, Defendants contend that no lesser remedy is warranted because the sanction of barring the asbestos claims is necessary to (1) keep Plaintiffs from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

        Plaintiffs contend that the asbestos claims are not barred on grounds of judicial estoppel. First, Plaintiffs contend that Mr. Ojeda did not take inconsistent positions between his bankruptcy filing and the present asbestos action because at the time of his bankruptcy filing – and throughout the entire duration of that action – his asbestos claims were dismissed, such that he was not required to list them as an

6

asset in his bankruptcy action. Moreover, Plaintiffs argue that even if he should have identified the asbestos claims, the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

Second, Plaintiffs assert that Defendants bear the burden of establishing bad faith, but have no evidence that Mr. Ojeda acted in bad faith when he did not list his asbestos claims as an asset in his bankruptcy filing. Additionally, Plaintiffs suggest that bad faith cannot be proven in light of the fact that the claims were dismissed long before Mr. Ojeda filed for bankruptcy and were only reinstated by the MDL Court long after the bankruptcy was closed.

B.   Real Party in Interest/Standing

In the alternative, Defendants contend that Plaintiffs have no right to pursue the claims because the claims no longer belong to Plaintiffs and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Mr. Ojeda did not report the asbestos claims as assets in the bankruptcy filing, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the bankruptcy estate when the bankruptcy petition was filed. As a result, they assert that only the bankruptcy trustee can administer the claims.

Defendants also argue that because Mr. Ojeda did not reveal the asbestos claims, such that they were never properly scheduled as assets, the trustees were incapable of passing those claims back to Plaintiffs (or Mr. Ojeda) through abandonment of any remaining assets not administered (as would normally happen pursuant to 11 U.S.C. § 554). As such, Defendants assert that, even though the bankruptcy action has closed, the rights to the asbestos claims did not revert back to Mr. Ojeda upon that closure and instead remain with the trustee, such that Plaintiffs may not now pursue them.

Plaintiffs assert that, because the asbestos claims were dismissed during the entire pendency of the bankruptcy action, they were never assets of the bankruptcy estate – regardless of whether or not Mr. Ojeda disclosed them. In short, Plaintiffs argue that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

**IV.  DISCUSSION**

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all his or her interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but

8

even any potential and likely causes of action. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003); Oneida, 848 F.2d at 417 (providing that "[i]t has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest"). However, debtors are not required to list "every 'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset disclosure form." Freedom Med., Inc. v. Gillespie, No. 06-3195, 2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting Krystal Cadillac, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the bankruptcy estate "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences." In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000). However, in a Chapter 13 case (unlike a Chapter 7 case), the estate is controlled by the debtor, and not the trustee. Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194, 1210 n.2 (1991 (rehearing 1992)) (opinion sur panel rehearing) (citing 11 U.S.C. §§ 1302-03 and Bankruptcy Rule 2015(c) for the proposition that "Chapter 13 debtors are empowered to maintain suit even after a bankruptcy trustee has been appointed in their case: an essential feature of a chapter 13 case is that the debtor retains possession of and may use all the property of his

estate, including his prepetition causes of action, pending confirmation of his plan."); In re Kay E. Bowker, 245 B.R. 192, 195-200 (D. N.J. 2000) (rejecting argument that the trustee in a Chapter 13 case is the owner of a pre-petition cause of action not disclosed by a debtor in his petition and explaining that this is because, inter alia, "in Chapter 13 proceedings (unlike Chapter 7 proceedings) the creditors' recovery is drawn from the debtor's earnings, not from the assets of the bankruptcy estate; it is only the Chapter 13 debtor who stands to gain or lose from efforts to pursue a cause of action that is an asset of the bankruptcy estate"). Therefore, although it is true that, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered," Allston-Wilson v. Philadelphia Newspapers, Inc., No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20, 2006)(see also In re Kane, 628 F.3d 631, 637 (3d Cir. 2010) ("an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554")), because the debtor remains in control of the estate at all times throughout a Chapter 13 bankruptcy (even after a trustee is appointed to the case), and for the reasons set forth in In re Bowker, the issue of abandonment of an asset by the trustee – and reversion of the rights to a cause of action – (as

arises under 11 U.S.C. § 554 in a Chapter 7 case) does not arise in a Chapter 13 case.

Judicial estoppel is a "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and citations omitted). At the heart of judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782). However, this doctrine is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." Id. It "should only be applied to avoid a miscarriage of justice" and "is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324 (internal quotation marks and citations omitted). The "doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362 (quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir.

11

1980)). "It is a fact-specific, equitable doctrine, applied at courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010).

The Third Circuit Court of Appeals has formulated this test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith – i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001)). The Third Circuit has further concluded that a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at 416-18); Ryan Operations, 81 F.3d at 363. However, the application of this inference does not arise "from the mere fact of nondisclosure." Ryan Operations, 81 F.3d at 364. Third Circuit precedent makes clear that a court should conduct an individualized factual assessment regarding, inter alia, knowledge and motive of the debtor surrounding disclosure of

12

assets in a bankruptcy action. See id. at 363-64 (concluding that the inference did not apply where the creditors were most likely unaffected by the failure to disclose, the debtor received no benefit from its non-disclosure, and that there was no evidence that the debtor sought to conceal the claims deliberately); Krystal Cadillac, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

**V.   ANALYSIS**

    A.   Judicial Estoppel

Defendants contend that, because the dismissal of Mr. Ojeda's asbestos claims was merely administrative (such that the claims could be reinstated by Plaintiffs or the MDL Court at some point in the future), the claims were assets whose omission from Schedule B of the bankruptcy action constituted an inconsistent position between the two lawsuits and creates an inference of bad faith. Plaintiffs contend that because the claims had been in a dismissed stage for approximately nine years at the time of the bankruptcy filing, they were not in essence assets and did not need to be disclosed – and that, if they did constitute assets that should have been disclosed, the failure to disclose them was a good faith mistake.

13

      i.    Step One: Has Plaintiff Taken Two Irreconcilably Inconsistent Positions?

It is undisputed that Mr. Ojeda did not list asbestos claims as assets in his bankruptcy filing. His duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. See Krystal Cadillac-Oldsmobile, 337 F.3d at 322. By failing to include his asbestos claims as an asset in his bankruptcy filings, Mr. Ojeda represented to the Bankruptcy Court that such an asset did not exist. Now, in this Court, Plaintiffs are pursuing those same claims that he represented did not exist. Accordingly, the two positions are irreconcilably inconsistent. See id. at 319-320.

      ii.   Step Two: Did Plaintiff Change His Position In Bad Faith

It is difficult to divine, through a prism of twenty years later, the exact nature and scope of the "administrative dismissals." See Bartel v. Various Defendants, 965 F. Supp. 2d 612, 617 (E.D. Pa. 2013) (Robreno, J.) (explaining the difficulty in attempting to discern orders that were entered over twenty years ago in the context of personal jurisdiction in the MARDOC cases).[4] While Judge Weiner's orders appear to invite

---

[4]     "Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that

reinstatement subject to certain conditions, none of the cases that were administratively dismissed was ever reinstated from 1997 to 2009, until this Court, sua sponte, did so en masse. That a layman would have had the foresight to know in 2002 when he filed for Chapter 13 bankruptcy, that nine years later a new presiding Judge of the MDL would reopen his asbestos case, albeit eighteen years after it was filed, would have required unrealistic power of prescience. Rather, for all practical purposes, the entire MARDOC litigation in the MDL Court - including Mr. Ojeda's case - was in a "black hole," uncertain to ever emerge again. See Hon. Eduardo C. Robreno, The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm?, 23 Widener L. J. 97, 126 (2013).

Under these circumstances, the Court finds that the failure to disclose the asbestos claims was not in bad faith, nor an attempt to play "fast and loose" with the Bankruptcy Court. See Krystal Cadillac, 337 F.3d at 319-20.[5] Accordingly,

---

have thwarted the progress of this litigation." Bartel, 965 F. Supp. 2d at 614.

[5]     While the Third Circuit has said that, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose," Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also noted that an inference of bad faith does not always arise from "the mere fact of non-disclosure." Ryan Operations, 81 F.3d at 364. Under the facts of this case, the Court need not decide whether there was a lack of bad faith on the part of Mr. Ojeda,

the Court does not find that Mr. Ojeda changed his position "in bad faith" such that it warrants the application of judicial estoppel. See Ryan Operations, 81 F.3d at 363.[6] Accordingly, Defendants' motion for summary judgment on grounds of judicial estoppel will be denied. See Anderson, 477 U.S. at 248-50.

B.   Real Party in Interest/Standing

Defendants next contend that, despite Mr. Ojeda's failure to list the asbestos claims on his bankruptcy petition, the claims now belong to the bankruptcy trustee (pursuant to 11 U.S.C. § 541(a)(1)) such that Plaintiffs have no right to pursue them. They assert that, because Mr. Ojeda did not properly schedule those claims as assets, the trustees were incapable of passing those claims back to Mr. Ojeda through abandonment of any remaining and unpursued assets as would normally happen pursuant to 11 U.S.C. § 554.

It is true that, once a debtor has filed his bankruptcy petition, the bankruptcy estate, "encompasses

---

or whether the inference of bad faith was rebutted, in that in either event, the same result is obtained.

[6]   Additionally, the Court has reviewed the bankruptcy petition filed by Mr. Ojeda, see ECF No. 78-2, and concludes that, to the extent the law generally requires disclosures of the type of potential claims that were pending at the time of the bankruptcy filing, an omission of those claims may very well have been based on a good faith mistake of what was required by the documents, or a simple incorrect assessment of the viability of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences," In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000). However, in a Chapter 13 case (unlike a Chapter 7 case), the estate is controlled by the debtor, and not the trustee. Maritime Electric Co., 959 F.2d at 1210 n.2 (opinion sur panel rehearing); In re Kay E. Bowker, 245 B.R. at 195-200. Because the debtor remains in control of the estate at all times throughout a Chapter 13 bankruptcy (even after a trustee is appointed to the case), and for the reasons set forth in In re Bowker, the issue of abandonment of an asset by the trustee – and any accompanying reversion of the rights to a cause of action – (as arises under 11 U.S.C. § 554 in a Chapter 7 case) does not arise in a Chapter 13 case. Nonetheless, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action which a debtor fails to schedule, remains property of the estate because it was . . . not administered," Allston-Wilson v. Philadelphia Newspapers, Inc., No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20, 2006).

In the instant case, Mr. Ojeda erred by failing to disclose his administratively dismissed asbestos claims when he filed his bankruptcy petition. While the Court has held that this error was not in bad faith and thus not barred by judicial estoppel, these claims are nonetheless part of the bankruptcy

17

estate as they were not only potential claims, but were realized claims technically held in abeyance by the Court, and thus needed to be disclosed. Because the bankruptcy was filed pursuant to Chapter 13 (rather than Chapter 7), it was Mr. Ojeda – and now Plaintiffs (rather than the trustee) – who is the real party in interest for such claims. Therefore, the administrators of Mr. Ojeda's estate (i.e., Plaintiffs) are properly named as the plaintiffs in the present action and have standing to pursue the asbestos claims. However, it is not clear whether the creditors to the bankruptcy case recovered in full on the debts owed by Mr. Ojeda, pursuant to the Chapter 13 plan that was confirmed in the absence of the trustee's and creditors' knowledge of the asbestos claims.

      Having held that the claims belong to the estate and that, therefore, distributions of any recovery should be made in accordance with the priorities set forth in the Bankruptcy Code, the Court must determine the appropriate remedy. In bankruptcy proceedings, the trustee's position is similar to that of a fiduciary to both the debtor and creditors. Under the bankruptcy code, the trustee must "investigate the financial affairs of the debtor," 11 U.S.C. § 704(a)(4), and "in so doing is bound to be vigilant and attentive in advancing the estate's interests." In re Martin, 91 F.3d 389, 394 (3d Cir. 1996). "In sum, it is the trustee's duty to both the debtor and the creditor to realize

from the estate all that is possible for distribution among the creditors." Id. (citing 4 Collier, Bankruptcy ¶ 704.01 (15th ed.)). Therefore, although Plaintiffs remain in control of the property of the estate, including Mr. Ojeda's asbestos claims – such that they have standing to pursue those claims on his behalf, the trustee must nonetheless be notified of the claims that were not disclosed.[7] This is true despite the fact that the bankruptcy action has long been closed. The Bankruptcy Court for the District of Puerto Rico (Old San Juan) is the court in the best position to provide the proper parties (including Mr. Ojeda's creditors) with notice of Plaintiffs' intent to pursue the instant asbestos claims. See 11 U.S.C. § 554(b). To expedite the process of putting the trustee and the Bankruptcy Court on notice of the claims, the Court will direct the Clerk of this Court to (1) create a copy of this memorandum and accompanying order to be filed on the docket of Mr. Ojeda's bankruptcy case in the Bankruptcy Court for the District of Puerto Rico (Old San Juan) (No. 02-bk-00922-SEK13); (2) ascertain the identity of the

---

[7] This will, in essence, constitute an amendment to Mr. Ojeda's initial bankruptcy petition, which will allow the trustee and/or creditors to decide whether to seek to reopen the bankruptcy estate. Regardless of whether or not such reopening is sought, Plaintiffs will be permitted to proceed with Mr. Ojeda's asbestos claims in the present action, as he is the real party in interest, with ownership of the claims and standing to pursue them.

trustee; and (3) serve a copy of said memorandum and order upon the trustee at his/her last known address.

Having held that the administrators of Mr. Ojeda's estate (i.e., Plaintiffs), and not the trustee, are the real party in interest of the instant asbestos claims, summary judgment in favor of Defendants on grounds of the real party in interest/standing will be denied. Anderson, 477 U.S. at 248-50.

**VI. CONCLUSION**

For all of the reasons stated above, Defendants' motion for summary judgment will be denied.